## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**Manoochehr Khazali**                                                                                        **Plaintiff**

**v.**                                                                                         **No. 3:20-cv-650-BJB-RSE**

**State Farm Fire & Casualty Co.**                                                                            **Defendant**

### MEMORANDUM OPINION AND ORDER

Khazali sued his insurer, State Farm Fire & Casualty, because it paid him $90,000 instead of "up to" $374,000 under his homeowner's policy. Notice of Removal (DN 1) at ¶ 3. Khazali's basement flooded in July 2012, damaging several items, including antiques and collectibles. Amended Complaint (DN 16) ¶¶ 4, 12. He immediately reported the losses to State Farm, ¶ 4, which requested a list of damaged items. Reply (DN 23) at 5. Two years later, Khazali submitted that list, and State Farm notified Khazali that his claim would be "completed" and "processed" in another two years—by April 2016. Amended Complaint ¶ 8.

During 2016 and 2017, Khazali continued to correspond with State Farm about his claims. ¶¶ 9–15. State Farm's appraisers, in his view, lacked the expertise to value his damaged items, which included antique Persian rugs allegedly worth "tens of thousands of dollars." ¶ 12. State Farm agents, however, responded in July 2017 that Khazali had "enough money," should simply "take what State Farm gives" him, and "go enjoy it." ¶ 13. Then State Farm sent Khazali a settlement check for a little less than $90,000 in January 2018. Partial Motion to Dismiss (DN 20), Attachment 1 at 2.

Khazali believed this amount was insufficient, declined to deposit the check, and continued to contact State Farm. Amended Complaint ¶ 15. Six months later, in July 2018, he received an email stating that "there will not be any adjustment to the settlement." ¶ 20. Even so, Khazali persisted in hopes of reaching "a fair settlement" through his outreach to State Farm. ¶ 21. Yet its agents reiterated, over the phone and through email, that State Farm would not further review Khazali's claims. ¶¶ 22–25. Khazali finally deposited the settlement check in 2019 and sued State Farm in state court on August 12, 2020. Response (DN 21) at 10; Partial Motion to Dismiss at 2.

Khazali asserted five causes of action against State Farm:

1. "[U]nfair discrimination due to his race and national origin," in violation of § 304.12-080 of the Kentucky Insurance Code. Amended Complaint ¶¶ 27–30.

2. Breach of State Farm's contractual duty in violation of his homeowner's policy. ¶¶ 32–36.

3. Violation of the Kentucky Unfair Claims Settlement Practices Act. ¶¶ 38–42.

4. Bad-faith violation of the Kentucky Consumer Protection Act. ¶¶ 44–55.

5. Promissory estoppel. ¶¶ 57–62.

State Farm properly removed the case to federal court, DN 1, and filed a partial motion to dismiss, DN 20. It seeks dismissal of all claims except Khazali's Unfair Claims Settlement Practices Act claim, conceding that it "likely contains sufficient allegations" to move forward. Partial Motion to Dismiss at 3.

### A. Motion for Leave

Khazali sought leave to file a sur-reply after the parties briefed State Farm's motion to dismiss. DN 25. He aimed to "respond to the new cases cited by Defendants in their Reply." Motion to File Sur-reply at 1. Whether to grant a sur-reply lies within this Court's discretion in administering this case and its docket. *Key v. Shelby County*, 551 F. App'x 262, 264 (6th Cir. 2014) (denial of motion for leave to file a sur-reply reviewed for abuse of discretion). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies," Courts usually allow sur-replies if the reply raised new issues that the opposing party hasn't had a sufficient chance to address. *See id.* at 265 ("appropriate circumstances" such as'[w]hen new submission and/or arguments are included in a reply brief," or when "a nonmovant's ability to respond to the new evidence has been vitiated'") (quoting *Seay v. Tenn. Valley Authority*, 339 F.3d 454, 481 (6th Cir. 2003)).

Here, State Farm's Reply does not necessitate a sur-reply. It raised no new facts and made only one new argument: that Khazali did not allege facts sufficient to allow a reasonable jury to find that State Farm discriminated against him because of his race or national origin. Reply at 3. Khazali's proposed sur-reply, however, does not address this new argument. *See* Sur-reply (DN 25), Exhibit A, Attachment 1. Instead, it addresses the private right of action under § 446.070 (*id.* at 1–3), the differences between water and fire damage (*id.* at 3–4), the triggering date for the statute of limitations under the Kentucky Consumer Protection Act (*id.* at 4–5), and the validity of promissory estoppel as an alternative theory of recovery (*id.* at 5–6). Khazali had the opportunity to respond when these issues appeared in the Partial Motion to Dismiss (at pp. 7, 9–10, 11–12, and 12–13, respectively). But he didn't take that chance, and he can't now file a second opposition brief. Because no other new

factual or legal issue remains for Khazali to address, the Court denies Khazali's motion.

### B. Unfair Discrimination

The Kentucky Insurance Code prohibits "any unfair discrimination in favor of particular persons, or between insureds or subjects of insurance having substantially like insuring risk … in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor." Ky. Rev. Stat. Ann. § 304.12-080(1). Khazali claims that State Farm discriminated against him on the basis of race and national origin during the claims-handling process. Amended Complaint ¶ 28. The statute, however, does not cover claim handling, and, in any event, Khazali hasn't pled sufficient facts to raise a plausible, non-conclusory claim of discrimination.

The statute, naturally read, bars discriminatory "terms," "conditions," "rates," or "amount[s] of premium." § 304.12-080. The first subsection, which forms the basis for Khazali's claim, prohibits "unfair discrimination" "in the terms or conditions" "or in the rate or amount of premium charged" for "any insurance contract." § 304.12-080(1). The second and third subsections prohibit discriminatory rates and fees for life insurance and health insurance, respectively. § 304.12-080(2)–(3). No aspect of this provision addresses the discriminatory *handling* of claims made under policies written with *non*discriminatory terms and premiums. Neither party has cited any caselaw, and the Court is unaware of any, applying the statute to claim handling. The handling of claims simply does not appear to fit within the statute's regulation of "terms or conditions" and "the rate or amount of premium charged." § 304.12-080(1).

Another provision of the Insurance Code, by contrast, clearly covers the claim handling process. Section 304.12-230 prohibits insurers from "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to *claims* arising under insurance policies," or from "[n]ot attempting in good faith to effectuate prompt, fair and equitable *settlements of claims* in which liability has become reasonably clear." § 304.12-230(2) & (6) (emphasis added). The interpretation of subsection -080 set forth above, therefore, does not foreclose a policyholder from recovery if an insurer does not promptly and equitably settle a claim based on a policyholder's race or national origin, or for another unfair or inequitable reason the law rejects. Indeed, Khazali is seeking relief for the same conduct under both -080 and -230, and State Farm hasn't asked the Court to dismiss the latter claim. Partial Motion to Dismiss at 3.

The other fifteen subsections of -230 also speak far more directly to the conduct Khazali alleges: each contains similarly specific language targeting the process of valuing claims and reaching settlement. *See, e.g.*, § 304.12-230(3) ("Failing to adopt and implement reasonable standards for the prompt investigation of *claims* arising

3

under insurance policies.") (emphasis added). Where, as here, "one statute deals with a subject matter in a general way and another in a specific way," Kentucky law provides that "the more specific provision prevails." *Phoenix Healthcare of Kentucky v. Kentucky Farm Bureau Mut. Ins.*, 120 S.W.3d 726, 727 (Ky. Ct. App. 2003). Because § 304.12-230 covers claim handling in far greater specificity than § 304.12-080, the "more specific provision" prevails, *see* Scalia & Garner, *Reading Law: The Interpretation of Texts* 183 (2012), and § 304.12-230 would apply to allegations such as these. Even assuming State Farm mishandled Khazali's claims as he alleges, § 304.12-080 provides no relief.

\* \* \*

In the alternative, even if § 304.12-080 did cover claim handling, Khazali's pleadings would not raise his claim above a speculative level. To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must in turn "plausibly sugges[t]" that the plaintiff can establish the elements of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "And a plaintiff's suggestion is plausible when it contains enough factual content that the court can reasonably infer that the defendant is liable." *Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Amended Complaint lacks well-pleaded factual allegations that suggest national-origin or racial discrimination here. Khazali asserts that he "was treated with unfair discrimination due to his race and national origin by various employees of State Farm." Amended Complaint ¶ 28. This is merely a conclusory statement. And "[l]egal conclusions, formulaic recitations of the claim's elements, and naked asserts of liability are all insufficient" to withstand a motion to dismiss. *Doe*, 903 F.3d at 581 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

Khazali further asserts "[t]hat [he] was treated differently than similarly situated and/or non-minority policy-holders." ¶ 29. As support for this statement, he cites the denial of "proper property appraisals," being "disrespected and belittled," and "communications" that State Farm agents allegedly "withheld" from him. *Id.* But these assertions fail to create any connection between State Farm's treatment and Khazali's race or national origin. He provides no factual support for the conclusion that State Farm treated him differently than similarly situated policyholders. The comment that Khazali had "enough money," ¶ 13, does not speak or even connote disfavored treatment attributable to his race or national origin. Based on the insufficiency of these factual allegations, the Court would dismiss the claim on this alternative basis as well.

### C. Breach of Contract

The terms of Khazali's homeowner's policy limit the time in which a policyholder may sue to "within one year after the date of loss or damage." Partial Motion to Dismiss at 8. Because the "date of loss" was in July 2012, this breach claim is time-barred. *Id.*

Kentucky allows parties to an insurance contract to limit the time period to bring suit. *See Webb v. Kentucky Farm Bureau Ins.*, 577 S.W. 2d 17, 18–19 (Ky. Ct. App. 1978).[†] Courts have upheld and enforced one-year limitations so long as they are "reasonable." *Id.* at 19. Khazali, however, argues those precedents addressed distinguishable hazards like fire, not the water damage at issue here. While fire leaves items "completely destroyed and unidentifiable," he surmises, water damage requires greater appraisal time because it may only partially damage items. Response at 8. And perhaps that is true. But Khazali cites no caselaw, and the Court is unaware of any, that would provide legal (or even factual) support for creating a distinct class of water claims for which a one-year limitations period would be unreasonable and unenforceable. Would 18 months suffice? 24? The answer could be dispositive in a case like this, and Khazali's theory offers no basis for even an emboldened judicial draftsman to choose. Absent any legally meaningful difference between water and fire damage claims, the Court declines to amend the parties' contractual agreement and create a longer limitations period for this class of claims.

Khazali also challenges the reasonableness of this limitation period as applied to his particular case. Response at 8. The multiyear delays at issue here, he contends, were "out of his control" and should give rise to an exception to the limitation. *Id.* at 9. The Court should follow *Willowbrook Investments v. Maryland Casualty Co.*, he contends, in holding that the plaintiff had no "reasonable time to sue" and could not reasonably have complied with a two-year limitations period following a fire. 325 F. Supp. 3d 813, 819–820 (W.D. Ky. 2018) (citing *Smith v. Allstate Insurance Co.*, 403 F.3d 401, 405 (6th Cir. 2005)). But Khazali offers no reason why he lacked a "reasonable time to sue," *id.*, or why he thinks the ensuing delay was outside his control. State Farm's alleged refusals to send a qualified appraiser in 2016, 2017, and 2018 do not explain the two-year delay between State Farm's request for a list of damaged items and Khazali's response to that request. Reply at 5. And even assuming he couldn't sue *immediately* after the flood occurred, the date of the accident may still represent the date when "a cause of action for breach of an insurance contract may 'accrue.'" *Smith*, 403 F.3d at 405. So long as the

---

[†] The parties cite Kentucky law on this issue, and the Court agrees that Kentucky law should govern the contract dispute. Khazali's residence and the evidence of the water damage are in Kentucky. Amended Complaint ¶ 4; *see Asher v. Unarco Material Handling*, 737 F. Supp. 2d 262, 667–68 (E.D. Ky. 2010) ("[A] strong preference exists in Kentucky for applying Kentucky law.").

5

claimant had "a reasonable time to sue" after his right arose, a contractual time limit is enforceable. *Id.*

Khazali's own inaction does not render State Farm's actions or its policy term unreasonable. Khazali filed his breach-of-contract claim too late to receive relief on that basis.

### D. Kentucky Consumer Protection Act

The Kentucky Consumer Protection Act prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. § 367.170(1). Section 367.220(1) provides a cause of action to "[a]ny person who purchases or leases goods or services … and thereby suffers any ascertainable loss of money or property" resulting from violations of § 367.170. The time in which an action may be brought, however, is limited: "within one (1) year after any action of the Attorney General has been terminated or within two (2) years after the violation of KRS 367.170." § 367.220(5). This statutory claim, too, is time-barred.

Subsection 170 affords Khazali a private right of action for a bad-faith claim. "[T]he purchase of an insurance policy is a purchase of a 'service' intended to be covered by the Consumer Protection Act." *Stevens v. Motorist Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1998). But Khazali didn't bring his claim until more than "two … years after the violation of KRS 367.170." § 367.220(5). And the date of the "violation," which triggers the running of the statutory limitations period, is the date of the conduct giving rise to that violation. *See Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-801-MR, 2004 WL 2011375, at *4 (Ky. Ct. App. Sept. 10, 2004). Khazali sued on August 12, 2020, *see* Notice of Removal, Attachment 2, based on State Farm's actions in 2018 and earlier.

In January 2018, State Farm paid Khazali an allegedly insufficient amount, which he complains about in this lawsuit. *See* Amended Complaint at 6; Partial Motion to Dismiss at 2. The underpayment is the latest State Farm action that Khazali's lawsuit challenges, and therefore represents the latest potential "violation" at issue. *See Arnold v. Liberty Mutual Insurance Company*, 392 F. Supp. 3d 747, 767 (E.D. Ky. 2019) (KCPA violation is based on the conduct "substantially disputed"). And that January 2018 payment occurred more than two years before Khazali sued about it in August 2020.

Khazali, however, contends he did not realize this was the final payment; he thought his dealings with State Farm remained ongoing (and presumably unripe for a lawsuit of this variety). Even if sincerely held, such a belief would not toll the statute of limitations. Section 367.220(5) does not contain a "discovery rule" that defers the limitations period until a plaintiff discovered or should have discovered the deceptive act. *See Cook*, 2004 WL 2011375 at *3–4. Kentucky's legislature and courts

6

have not incorporated this common-law doctrine as part of the Insurance Code. To the contrary, the Kentucky Court of Appeals has reasoned that the state legislature could have easily written the law to adopt the discovery rule, but didn't. *See id.* Instead, the date on which the "act or practice about which [the plaintiff] complains" is what governs. *Id.* at *4. Here, that date is in January 2018, when State Farm paid out Khazali's claim. Partial Motion to Dismiss at 2.

Even assuming that the discovery rule applied, Khazali's claim would appear to remain time-barred. He contacted State Farm in April 2018 about the settlement value and received a response by email on July 24, 2018: "Upon further review of your claim there will not be any adjustment to the settlement." Amended Complaint ¶ 20. And Khazali cited this very email in his reply brief (at 9–10). This clear and unequivocal statement indicates that no more adjustments were forthcoming, starting the limitations period even under Khazali's own theory. Yet he did not sue until August 12, 2020, more than two years later.

### E. Promissory Estoppel

Finally, Khazali argues that "State Farm failed to honor its promises and obligations to Plaintiff," giving rise to an estoppel claim, when it "wrongfully breached and violated the terms of the Policy" by not sending a qualified appraiser. Amended Complaint ¶ 60. But plaintiffs cannot rely on the existence of a contractual promise or breach in order to pursue this sort of quasi-contract claim. "[P]romissory estoppel is not intended to provide an alternative to a breach of contract claim, where a contract exists on the subject matter of the alleged promise sought to be enforced." *Arnold*, 392 F. Supp. 3d at 778 (internal quotations omitted). Khazali predicates this claim (and his others) upon his homeowner's policy, which he seeks to enforce against State Farm. Neither side contends that the policy is not an enforceable contract. Because Khazali relies on no other promises besides those in the contract, his promissory-estoppel claim fails.

### ORDER

The Court denies Khazali's motion for leave to file a sur-reply and grants State Farm's partial motion to dismiss, with prejudice, Khazali's claims with respect to unfair discrimination, breach of contract, the Kentucky Consumer Protection Act, and promissory estoppel.

Benjamin Beaton, District Judge
United States District Court

cc: counsel of record

October 13, 2021